JOHN McFARLAND, Appellant, v. THE STATE OF KAN-
SAS, Appellee.

*Criminal Appeal from Wyandotte County.*

The legislature did not transcend its authority in providing [§ 274, Crimes
Act, Comp. L. p. 340] against bringing stolen property in the state.
That section makes the retaining, within this state, of the possession of
property stolen without, equivalent to an original act of theft; regards
every asportation *animo furandi* as a new taking, and punishes it accord-
ingly.

*Semble*, this is the common law doctrine.

In such case, *held* that under said section [Comp. L. 341], the larceny may
be charged to have been committed, and may be indicted and punished,
in any county into or through which such property shall have been
brought.

*Held* that it is competent, in such a case, to examine witnesses as to the
original taking in another state.

The appellant in this case was tried in Wyandotte
county, on an information originally filed against him
before the criminal court of Leavenworth county, and
taken to Wyandotte for trial on a change of venue.
The charge was larceny, based on sec. 274 of the crimes
and punishments act of 1859, which reads as follows:

"Every person who shall steal, or obtain by rob-
bery, the property of another, in any other territory,
state or country, and shall bring the same into this
territory, may be convicted and punished for larceny,
in the same manner as if such property had been felo-
niously stolen or taken within this territory; and, in
any such cases, the larceny may be charged to have
been committed, and may be indicted and punished,

in any county into or through which such stolen property shall have been brought."

The information contains two counts, the first of which charges that the said John McFarland, on the 8th day of January, A. D. 1865, late of said county of Leavenworth, at said county, and within the jurisdiction of this court, "one mare, one filly and two geldings, each of the value of one hundred dollars, of the goods and chattels of one Lucinda Ann Baldwin, feloniously did steal, take and carry away."

The second count charges that said McFarland, at the same time and place—the same property, then lately before feloniously stolen, taken and carried away—feloniously did buy and receive then and there, well knowing the same to have been stolen.

The jury found him guilty of larceny, and he was sentenced to five years' confinement in the state penitentiary.

It appears, from the bill of exceptions, that upon the trial one Baldwin was sworn as a witness for the state, and was proceeding to testify as to the taking of the property described, in Platte county, Missouri, whereupon defendant's counsel objected to any testimony being given as to the taking or stealing of the property in Platte county, Missouri, which objection was, by the court, overruled, and the state then proved that the property described in the information was taken from the premises of said Baldwin, in Platte county, Missouri, and evidence was given, tending to show that the same was brought by defendants into the county of Leavenworth.

There was no evidence that the property was taken in Leavenworth county, other than that it was taken

in Platte county, and subsequently found in the possession of the defendant in Leavenworth county.

To this evidence exceptions were duly taken, and the counsel for the accused then prayed the court to instruct the jury—

1. That unless they are satisfied from the evidence that the defendant took, stole and carried away the property in the county of Leavenworth, in the State of Kansas, then they must acquit the defendant.

2. If the evidence shows that the property was stolen outside of the State of Kansas, then they must acquit the defendant.

3. Unless the jury find that the facts stated in the indictment have been established to their satisfaction, they must find for the defendant.

4. That proof of a larceny committed outside of the state, does not tend to prove that a crime has been committed in the county of Leavenworth.

The court refused to give each of these charges, and defendant's counsel excepted, and the court then charged the jury, as follows:

If the jury are satisfied from the evidence that the defendant stole the property in Platte county, Missouri, and feloniously brought the same into the county of Leavenworth, in the State of Kansas, they must convict the defendant.

To this charge defendant's counsel excepted, and the court then further instructed the jury as to the presumption arising from the possession of recently stolen property.

*Gambell & Pendery*, for appellant.

*H. W. Ide*, district attorney, for appellee.

*Ide* submitted :

The only question presented by the record in this case, relates to the constitutionality of section 274, of the crimes act (p. 340–1, Compiled Laws, 1862).

In contemplation of law, every asportation of stolen property, *animo furandi*, is a new caption, and therefore it has always been held at common law, that the stealing of property in one county of the realm and taking it into another, was larceny in the latter county. *Roscoe's Crim. Ev.*, 521; *Chitty's Crim. Law*, 943–4; *Wharton's Am. Crim. Law*, §§ 284, 603, 1812, 1817; 1 *Bish. Cr. L.*, § 598–600.

Though the Supreme Court of New York, in People v. Burke, 11 Wend., 129, expressed doubts as to the correctness of the previous ruling in that state, yet no decisions in this country are known which conflict with the common law principle above stated.

But, in most of the states, they now have statutes similar to our own; and though some of these statutes have been in existence for years, it is not known that their constitutionality has ever been questioned, except by the Supreme Court of Michigan, where the judges were equally divided in opinion. (*See* 11 *Mich. R.*, 328.) A statute will not be declared unconstitutional, unless its infringement of the superior law is clear, beyond substantial doubt. The only provision of our constitution that can, by any possible construction, be claimed to be impaired, is section 10 of the bill of rights, which provides, among other things, that "in all prosecutions the accused shall be allowed to * * demand the nature and cause of the accusation against him."

This personal guaranty was only intended to secure

every party accused against being tried upon secret
and unknown charges, and was not intended to estab-
lish any system of criminal pleading.   It only requires
that the nature and cause of the accusation shall be
made known, and not that the evidence or facts to sup-
port it shall be stated ; and an indictment which would
have been good at common law, would be good under
this section of the bill of rights.

. But at common law, where property was stolen in
one county and carried into another, as before stated,
the venue was laid in the latter county.   *Whart. Crim.
L.*, §§ 284, 603 ; 1 *Chitty, Crim. L., p.* 195 ; 10 *Mass.*,
154 ; 7 *Metc.*, 475.

But under the statute we are considering, every par-
ticular of the offense is stated as it must be proved,·
except the mere place where the original caption oc-
curred.

But in theory of law, even the venue itself is cor-
rectly stated, for the law contemplates that every fact,
necessary to constitute larceny, actually took place in
the county into which the stolen property was brought.
It says the party not only carried it away in that
county, but he captured it there, also ; and the only
object of inquiring into facts occurring in another
state, is to ascertain the relation the accused sustained
to the property he is charged with stealing.

What is the meaning of the term "venue," when used
in connection with criminal pleading ?   Does it mean
the place where all the facts transpired, or the place
where the law says the crime was committed ?   We
think, the latter.   To hold otherwise would be to require
every particle of the evidence to be stated, with the
place of its occurrence set forth.   Certainly, the con-

stitution never contemplated any such anomaly and absurdity.

It is not the violation of the laws of the other state, but the violation of the laws of this state, which it seeks to punish. It is not that the party stole the property in the other state, but that, being a thief, seeking to convert the property of another, feloniously, to his own use, he brings the same into this state; and this the statute makes larceny in our state.

It would hardly do to hold a statute unconstitutional merely because it might not be convenient for the party violating it to defend himself. Nor does this section quoted place any restrictions on the right of citizens of other states to enter this state. It might as well be said that a law prohibiting a party from bringing into the state diseased cattle, was void, because it imposes restrictions on his right to enter the state.

The section of the bill of rights above referred to also provides that "no person shall be  *  *  twice put in jeopardy for the same offense." But this is a personal privilege, which the accused may claim. If he sees fit to waive it, he may, and the law, and conviction under it, would both be valid. But under the operation of the statute we are considering, the most that can be claimed is, that the defendant is liable to be twice put in jeopardy; but the constitution recognizes no such plea. A mere liability to be twice put in jeopardy can never be urged. It is only when the party is in jeopardy the second time that he can claim the protection of this constitutional safeguard.

Possibly it may also be urged that under this section the indictment ought to show that the act committed in the other state was an offense against the laws of that state, and inasmuch as the section provides that

this need not be done, that, therefore, it is invalid. We hardly think this objection goes to the constitutionality of the law; for if it were necessary to allege that the act done was an offense against the foreign law, then it would simply be the duty of the grand jury to make the allegation required. If made, the indictment would be good, and the law valid. It is not necessary either to allege in the indictment, or prove on the trial, that the original taking was an offense, according to the laws of the foreign state, or to allege or prove what the laws of such state may have been. (11 *Wend.*, 129 ; 1 *Mass.*, 116 ; 2 *ib.*, 14 ; 26 *Law Rep.*, *p.* 395.) The fact that the original caption was a crime under such laws has nothing to do with the defendant's guilt or innocence of a crime committed in this state.

*By the Court,* Bailey, J.

The record in this case presents two questions for the consideration of this court, viz :

1. Does the information sufficiently charge an offense punishable by the laws of this state?

2. Did the court err in its ruling, as to the admission of evidence, or in its instructions to the jury?

And, first, as to the information. We have no doubt as to the power of the legislature to provide for the punishment of the offense defined by sec. 274, of the crimes and punishment act, which consists, not in stealing property in another state or territory, but in bringing property thus feloniously taken within the limits and jurisdiction of this state, to the manifest detriment of the public morals. The original taking may have been a crime against the laws of the state where it was

committed, but of that the laws of this state take no cognizance; but surely, every civilized community must have the right to prevent its soil and territory from being converted to the vile uses of thieves and robbers, a receptacle of stolen goods, and to protect its citizens against the demoralizing effects of such depraved examples.

The legislature of Kansas has not transcended its legitimate authority in the enactment above cited. That act makes the retaining possession of the stolen property within this state, equivalent to an original act of theft, and declares it may be punished in the same manner as an original larceny.   It regards every asportation of the property *animo furandi* as a new taking, and in this, it but echoes the settled principles of the common law.   The act expressly declares that in such a case *"the larceny may be charged to have been committed, and may be indicted and punished, in any county into or through which such property shall have been brought."*

That is precisely what has been done in the case before us, and we are entirely satisfied as to its sufficiency.

Second, as to the ruling of the court in admitting the evidence of the witness, Baldwin, we think it entirely unexceptionable, from the fact that it was necessary, first to prove the wrongful means by which McFarland came into possession of the property, before he could be punished for its continued wrongful possession.

Hence the several instructions asked for by his counsel, and refused by the court, were properly refused, since all of them are based upon the theory that our courts have no authority to inquire by what criminal

or wrongful means property was acquired outside the limits of our state.

Judgment affirmed.

All the justices concurring.