THE STATE OF KANSAS v. FRANK WHITE.

No. 15,359.  (92 Pac. 829.)

SYLLABUS BY THE COURT.

1. CRIMINAL LAW—*Limitation of Action—Beginning of Prosecution*. A prosecution by information for a felony is commenced on the date the warrant which is executed is placed in the hands of the officer for service, and not on the date the information is filed; and upon the hearing of a motion to quash an information which states an offense the prosecution of which is apparently barred the court may examine the prior proceedings to ascertain the time when the action was in fact begun.

2. —— *Complaint and Warrant—Waiver of Defects*. If upon his arrest for a felony the party charged consents to a continuance, and without objection to the complaint or warrant gives bond to appear at a later date and answer, he waives all defects in the complaint and warrant and thereafter cannot be heard to say they were insufficient to begin a criminal action against him and arrest the running of the statute of limitations.

3. —— *Detention for Preliminary Examination—Sufficiency of Complaint and Warrant*. A complaint and warrant for a felony which state the date of the offense as "the blank day" or "the —— day" of a month and year named are sufficient to authorize the detention of the party charged until a preliminary examination can be held; and this is true although

The State v. White.

the prosecution apparently is barred by the statute of limitations.

4. LARCENY—*Property Brought into this State—Conflict of Laws.*
In a prosecution under section 285 of the crimes act (Gen. Stat. 1901, § 2286), providing that every person who shall steal or obtain by robbery the property of another in any other state, territory or country, and shall bring the same into this state, may be convicted and punished for larceny in the same manner as if such property had been feloniously stolen or taken within this state, the question whether the property brought into the state was stolen is to be determined by the law of this state.

5. —————— *Changing Brands on Cattle.* If a person in another state mark or brand, or alter the mark or brand of, any animal the subject of larceny and the property of another, with intent to steal it or to convert it to his own use, so that if the marking, branding or alteration were done in this state he would be guilty of the larceny defined by section 83 of the crimes act (Gen. Stat. 1901, § 2076), and then brings such animal into this state, he may be convicted of the offense denounced by section 285 of the crimes act.

6. —————— *Information.* In a case of the character just described the offense may be charged in the information as simple larceny.

7. —————— *Instructions—Recent and Unexplained Possession of Stolen Property.* An instruction regarding the incriminating effect of the recent and unexplained possession of stolen property modeled after the fifth paragraph of the syllabus of the case of *The State v. Cassady,* 12 Kan. 550, criticised but not condemned.

Appeal from Barber district court; PRESTON B. GILLETT, judge. Opinion filed November 9, 1907. Affirmed.

*Fred S. Jackson,* attorney-general, and *Samuel Griffin,* for The State.

*Noble & Tincher,* and *Jackson & Noble,* for appellant.

The opinion of the court was delivered by

BURCH, J.: On February 16, 1906, a complaint was filed before a justice of the peace charging the appellant with taking, stealing and carrying away two steers,

the property of J. M. Hale, on the "blank day of February, 1904." A warrant was issued and immediately executed which stated the offense in the same language as the complaint, except that the date was given as "the ———— day of February, 1904." By agreement of parties further proceedings were postponed until March 1, 1906, and appellant entered into a recognizance to appear before the justice on that day to answer the complaint made against him. On the day fixed a preliminary examination occurred, and appellant was held for trial. On May 14, 1906, an information was filed in the district court charging appellant with larceny of the steers described on February 29, 1904. At the commencement of the preliminary examination the complaint and warrant were attacked by a motion to quash, which was denied; and a motion in the district court to quash the information was denied. Appellant was tried and convicted, a motion in arrest of judgment was denied, and he appeals. The foregoing proceedings furnish the basis for the first assignment of error.

It is argued that the face of the information disclosed the fact that the prosecution was barred by the statute of limitations. It has been decided that the commencement of a criminal proceeding does not date from the filing of the information, but from the issuance of the warrant which is served. The information need not allege the facts relied on to avoid the bar, but the court will look into the prior proceedings and from them ascertain the point at which the running of the statute was arrested. (See *The State v. Waterman,* 75 Kan. 253, 88 Pac. 1074, and cases cited in the opinion.)

Appellant says that an examination of the prior proceedings discloses that the complaint and warrant were void because the date of the offense was charged in blank, so that it did not appear but that prosecution was barred. The attack made upon the complaint and warrant came too late. The motion to quash was not filed until the day of the preliminary examination. The

complaint and warrant had then spent their force. On February 16 appellant agreed to a continuance, and undertook to respond to the charge made against him. From that time he was held upon his recognizance. Having submitted to the arrest made under the warrant, and having given bond without objection to appear and answer, he waived all defects in the complaint and warrant. (*The State v. Bjorkland,* 34 Kan. 377, 8 Pac. 391; *The State v. Longton,* 35 Kan. 375, 11 Pac. 163; *Junction City v. Keeffe,* 40 Kan. 275, 19 Pac. 735; *The State v. Moseli,* 49 Kan. 142, 30 Pac. 189; *The State v. Dugan,* 52 Kan. 23, 27, 34 Pac. 409; *Topeka v. Kersch,* 70 Kan. 840, 79 Pac. 681, 80 Pac. 29.) Thereafter he could not be heard to say no proceeding was pending against him, and under the well-known rule he could be bound over for any felony which the preliminary examination disclosed. It makes no difference that he was not apprised of the date of the larceny charged until the preliminary examination. The prosecution nevertheless had been commenced and the running of the statute of limitations had been suspended.

Besides what has been said, the court is unable to agree with appellant upon the merits of his claim. The complaint and warrant were merely indefinite in respect to a matter upon which neither of them need be exact. They charged a larceny in February, 1904. Since under this charge the prosecution might not be barred they were not nullities or even subject to a motion to quash. If they had fixed the date of the crime so that apparently a prosecution would be barred, still they would not be void. It was expressly so held in the case of *In re Stewart,* 60 Kan. 781, 57 Pac. 976. The decision is based upon the reiterated doctrine that the chief purpose of a warrant is not notice, but the detention of a person charged with crime until a preliminary examination can be held; that it may merely state the imputed offense by name and be sufficient;

42—76 KAN.

that technical accuracy, formal precision and exhaustive detail are not necessary in either the complaint or warrant, and that the party charged receives his notice of the nature of the offense not from the complaint and warrant alone but from all the proceedings, and even then only in its general character and outlines, the full and formal statement being reserved for the information. This being true, no matter how indefinite, defective and irregular the charging part of the complaint and warrant may have been they initiated a prosecution and arrested the running of the statute of limitations.

Appellant lived in Oklahoma. While the steers in question were in the custody of their owner they were kept part of the time in Oklahoma and part of the time in Kansas. Under the evidence they might have been stolen in either jurisdiction. They were sold in Oklahoma by appellant and his partner (with whom he was jointly charged), and were delivered to the purchaser at Kiowa, Kan., on February 29, 1904. Therefore the matter of venue became important. The court instructed the jury as follows:

"In order to convict the defendants, or either of them, of the crime of grand larceny as charged in the information, the burden of proof is upon the state to establish to the satisfaction of the jury, beyond a reasonable doubt, each and all the following material allegations, to wit:

"(1) That the defendants, Frank White and Elmer Williams, or either of them if they were acting in concert, as partners, or counseling, aiding and abetting each other in the commission of the crime, did wilfully, unlawfully and feloniously, take, steal and carry away the two steers charged to have been stolen in the information, or either of them, branded with Z (commonly called 76 connected) on the left hip and with a bar as follows / (commonly called bar) on the left jaw, ear marked with an underbit in each ear.

"(2) That said offense was committed in Barber county, Kansas, or if not committed in Barber county, Kansas, then that the steers, or either of them, the property of James M. Hale, having been stolen by the

defendants, or either of them, in Oklahoma Territory, were brought by the defendants, or either of them, when acting in concert, as partners, or while counsel- · ing, aiding or abetting each other in the .commission of the crime, into the state of Kansas; or that the defendants counseled, aided, abetted, or assisted others in bringing said steers, or either of them,· from Oklahoma Territory, where they were stolen, into Barber county, Kansas.

"(3) That said offense was committed within two years immediately prior to the bringing of this action, which was brought on;the 16th day of February."

Appellant complains of the last clause. of the second subdivision of this instruction, and asserts that under it the jury did not need to be satisfied that the defendants or either of them stole the cattle, or assisted any one else in stealing them, or even knew that they were stolen when they were brought into Kansas. This argument ignores the canon that the entire instruction must be considered in ascertaining the meaning of any portion of it. The clause impugned is an alternative of the concluding portion of the one immediately preceding it. The defendants, having stolen the cattle in Oklahoma, must have brought them into Kansas or must have counseled, aided, abetted or assisted others in bringing ˙them into Kansas. The meaning is unmistakable in the light of all that precedes and follows. In the first subdivision the court told the jury they must find that the defendants or one of them stole the cattle; the second was devoted to venue; and the third fixed the limit of time within which the stealing must have taken place. In the discussion of venue and in the discussion of time the "offense" referred to is the offense committed by the defendants mentioned in the first subdivision, and in the venue portion of the charge all references to stolen cattle are references to cattle stolen by the defendants as described in the first subdivision. So interpreted, as it clearly must be, the clause objected to means: "or that the defendants counseled, aided, abetted or assisted others in bringing

said steers or either of them from Oklahoma Territory when they were stolen by the defendants, or either of them if acting in concert, into Barber county, Kansas."

One of the contested questions in the case was the mutilation and change of brands and marks upon the cattle. The court charged the jury that if the defendants knowingly and wilfully changed and altered the brands and marks upon the steers with intent to steal them or to convert them to their own use, and sold and disposed of them and delivered them to the purchaser in Barber county, Kansas, such conduct would clearly amount to grand larceny. Appellant argues that under this instruction it was open to the jury to convict him for acts done in Oklahoma, and that, too, without any evidence having been introduced showing that such acts were criminal in the foreign jurisdiction. The instruction was evidently drawn under section 285 of the crimes act (Gen. Stat. 1901, § 2286), which reads as follows:

"Every person who shall steal or obtain by robbery the property of another in any other state, territory or country, and shall bring the same into this state, may be convicted and punished for larceny in the same manner as if such property had been feloniously stolen or taken within this state; and in any such cases the larceny may be charged to have been committed, and may be indicted and punished, in any county into or through which such stolen property shall have been brought."

The gravamen of this offense is the bringing into this state of property which has been feloniously appropriated. Section 83 of the crimes act (Gen. Stat. 1901, § 2076) makes the alteration of brands with intent to steal or convert the branded animal larceny. Such conduct, being a manifestly dangerous depredation upon the right of private property, is deemed by the legislature of this state meet for punishment in the same manner as an ordinary stealing, and no matter what may be the law of the place where an alteration of brands occurs, if the property then be brought into

this state the asportation and possession here consti-
tute larceny here. The section quoted is section 274
of the crimes act of 1859 and of the Compiled Laws of
1862. In a case decided in 1866 involving the same
point Mr. Justice Bailey, speaking for the court, said:

"We have no doubt as to the power of the legislature
to provide for the punishment of the offense defined by
section 274 of the crimes. and punishment act, which
consists, not in stealing property in another state or
territory, but in bringing property thus feloniously
taken within the limits and jurisdiction of this state,
to the manifest detriment of the public morals. The
original taking may have been a crime against the laws
of the state where it was committed, but of that the
laws of this state take no cognizance; but, surely, every
civilized community must have the right to prevent its
soil and territory from being converted to the vile uses
of thieves and robbers, a receptacle of stolen goods,
and to protect its citizens against the demoralizing
effects of such depraved examples." (*McFarland v.
The State,* 4 Kan. 68, 74.)

The doctrine of this decision has been criticised as
an unwarranted extension of the fiction of constructive
larceny beyond the purpose for which it was originally
intended (editorial note, 15 L. R. A. 722), and it does
not obtain in some states; but its standing with the
courts is fairly stated in the recent case of *Barclay
et al. v. The United States,* 11 Okla. 503, 69 Pac. 798,
as follows:

"It is well settled by the great weight of authority
that we do not look to the law of the place from which
the property was brought, nor to the common law, to
determine the question of the larceny, but to our own
statutes. We do not seek to punish for crime com-
mitted in the Indian Territory, but for a new offense
committed in the Osage nation, in Oklahoma territory,
and against the laws of Oklahoma. The question as
to whether the original taking constituted larceny is
to be determined by our own laws, and not by the laws
of the place where the property was first taken. This
principle is settled by the following authorities: *Peo-
ple v. Burke,* 11 Wend. 129; *Murray v. State,* 18 Ala.

731; *People v. Staples,* 91 Cal. 23, 27 Pac. 523; *State v. Underwood,* 49 Me. 181,. 77 Am. Dec. 254; *Worthington v. State,* 58 Md. 403, 42 Am. Rep. 338; *State v. Knief,* 12 Mont. 92, 29 Pac. 654, 15 L. R. A. 722; *Hemmaker v. State,* 12 Mo. 454, 51 Am. Dec. 172; *State v. Butler,* 67 Mo. 61.    The courts of the state of Ohio, Texas and Massachusetts have held to a different rule, but they are not sustained by the weight of authority." .(Page 512.)

Pursuing further his line of argument, appellant says that the offense denounced by section 83 of the crimes act consists of certain enumerated elements which if relevant to his case should have been recited at length in the information, citing *The State v. Bellamy,* 63 Kan. 144, 65 Pac. 274, and other decisions of like .import.    The suggestion would be more forceable if appellant had been on trial for altering brands with intent to steal or convert, but he was not.    He was charged with, and tried for, the distinct offense of larceny committed in Kansas by bringing stolen property into the state, and by the express terms of section 285, *supra,* this crime may be charged in the information as simple larceny committed in this state.    To convict under this statute the prosecution must establish larceny or robbery committed before the property is brought into the state.    Here larceny was shown by proof of alteration of brands with intent to steal and convert.    The foundation was thus laid for punishing the unlawful asportation into this state, and the instruction was not only pertinent to material evidence but was correct.

Upon these propositions the decision in *McFarland v. The State,* 4 Kan. 68, is conclusive.    The information was for taking, stealing and carrying away in the county of Leavenworth certain animals.    The evidence was that the property was taken in Platte county, Missouri, and was found in the defendant's possession in Leavenworth county, Kansas.    In affirming a verdict of guilty of larceny the court said:

"The legislature of Kansas has not transcended its

legitimate authority in the enactment above cited. [Section 274, quoted above.]    That act makes the retaining possession of the stolen property within this state equivalent to an original act of theft, and declares · it may be punished in the same manner as an original larceny.    It regards every asportation of the property *animo furandi* as a new taking, and in this it but echoes the settled principles of the common law.  .  .  . Second, as to the ruling of the court in admitting the evidence of the witness, Baldwin, we think it entirely unexceptionable, from the fact that it was necessary, first to prove the wrongful means by which McFarland came into possession of the property, before he could be punished for its continued wrongful possession." (Page 75.)

The McFarland case has been cited with approval in *The State v. Price,* 55 Kan. 606, 609, 40 Pac. 1000, *The State v. Wade,* 55 Kan. 693, 41 Pac. 951, *The State v. Suppe,* 60 Kan. 566, 570, 57 Pac. 106, and in some other decisions.

The court instructed the jury upon the subject of the recent possession of stolen property as follows:

"The possession of stolen property recently after it has been stolen is *prima facie* evidence of guilt, and throws upon the possessor the burden of explaining his possession of the said stolen property, and if unexplained, or if his explanation is not satisfactory, it is sufficient of itself to warrant a conviction."

Appellant duly excepted, and it may be conceded that the rule stated is subject to some criticism in view of the present state of the criminal law.    Technically the unexplained possession of recently stolen property does not make a *prima facie* case of guilt. It is merely an evidential fact which should be submitted to the jury to be considered in connection with all other facts and circumstances disclosed by the evidence, but which, if the jury so regard it, is sufficient to warrant a conviction; and technically, the burden of proof in a criminal case never shifts.

However, the instruction states the common law upon the subject.    With some unimportant verbal changes

and the not improper addition of the phrase "or if his explanation is not satisfactory" it follows the fifth paragraph of the syllabus of the case of *The State v. Cassady,* 12 Kan. 550, decided in 1874. That syllabus has served as a model to district judges in the preparation of instructions in larceny cases ever since it was formulated. In 1894 it was expressly approved in the case of *The State v. Hoffman,* 53 Kan. 700, 37 Pac. 138. The objections to it noted above were adverted to in the case of *The State v. Powell,* 61 Kan. 81, 58 Pac. 968, and the court refused to extend its application to burglary, but it still remains an unmodified expression of the settled law of this state. This being true the instruction cannot be condemned.

The court gave a brief instruction pointing out the necessity of additional evidence as the time of possession becomes remote from the stealing, which appellant says the jury may have taken as an addition to his burden, but the plain import of the language used is otherwise.

The court also gave an instruction relating to the sale or conversion, in violation of the rights of the owner, of property known by the brands to belong to another, which does not specifically speak of felonious intent, but when considered as a whole and read with other instructions given its meaning is plain and could not have been misunderstood. Evidently it was not drawn under section 92 of the crimes act (Gen. Stat. 1901, § 2085), as appellant suggests.

The verdict is sustained by sufficient evidence, and the claimed variance between the information and the proof is unsubstantial.

The foregoing disposes of all assignments of error except those relating to testimony received and rejected. The court has not only examined each item of evidence presented but has carefully read the entire record. To state its views upon the various rulings complained of would require many pages of

manuscript which when printed would be of no value in any other proceeding. Nearly all the rulings were correct, and those which are questionable could not have been sufficiently prejudicial to affect the result of the trial.

The judgment of the district court is affirmed.